IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EUGENE PRATT, | ) | Civil Action No. 10-1741 |
| | ) | |
| Plaintiff, | ) | District Judge Arthur J. Schwab |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| v. | ) | |
| | ) | |
| FAYETTE COUNTY, et al., | ) | |
| Defendants. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

## I.    RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss filed by Defendants Jeffrey Beard and the Pennsylvania Board of Probation and Parole (ECF No. 18) be granted and that the Motion to Dismiss filed by Defendants Larry Medlock and Fayette County be granted. It is further recommended that the Complaint be dismissed with prejudice against the remaining John Doe Defendants under 28 U.S.C. § 1915A as it fails to state a claim upon which relief may be granted and it would be futile to allow Plaintiff to file another amended complaint in this matter.

## II.    REPORT

Plaintiff, Eugene Pratt, an inmate currently confined at the State Correctional Institution at Fayette, located in LaBelle, Pennsylvania, commenced this action under 42 U.S.C. § 1983 alleging violations of his constitutional rights against the following Defendants: Fayette County; Larry Medlock, Warden of the Fayette County Jail; Jeffrey Beard, former Secretary of the Pennsylvania Department of Corrections (DOC); John Does; and the Pennsylvania Board of Probation and Parole (Board).

A. <u>Standard of Review</u>

Presently pending are two motions to dismiss filed by various Defendants in this action (ECF Nos. 18 & 21). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In deciding this motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. <u>Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn</u>, 373 U.S. 746, 753 n. 6 (1963). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v.Twombly</u>, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. <u>Angelastro v. Prudential-Bache Securities, Inc.</u>, 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See* <u>California Pub. Employee Ret. Sys. v. The Chubb Corp.</u>, 394 F.3d 126, 143 (3d Cir. 2004) (citing <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. <u>Bell Atlantic Corp.</u>, 550 U.S. at 555 (citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Bell Atlantic Corp.</u>, 550 U.S. at 555. *See also* <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must

state a claim that is plausible on its face) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein).

In addition, in the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress adopted major changes affecting federal actions brought by prisoners in an effort to curb the increasing number of frivolous and harassing law suits brought by persons in custody. Pertinent to the case at bar is the new authority granted to federal courts for *sua sponte* screening and dismissal of prisoner claims. Specifically, Congress enacted a new statutory provision at 28 U.S.C. § 1915A, entitled "Screening," which requires the court to review complaints filed by prisoners seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). If the complaint is "frivolous, malicious, or fails to state a claim upon which relief can be granted," or "seeks monetary relief from a defendant who is immune from such relief," the court must dismiss the complaint. 28 U.S.C. § 1915A(b).

In addition, Congress significantly amended Title 28 of the United States Code, section 1915, which establishes the criteria for allowing an action to proceed in forma pauperis (IFP), i.e., without prepayment of costs. Section 1915(e) (as amended) requires the federal courts to review complaints filed by persons that are proceeding IFP and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Plaintiff is considered a "prisoner" as that term is defined under the PLRA, see 28 U.S.C. §§ 1915(h); 1915A(c), and he has been granted leave to proceed IFP in this action (ECF No. 4). In addition, it appears that the unserved "John Does" are employees of a government entity.

Thus, Plaintiff's allegations must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B) and § 1915A. In reviewing complaints under 28 U.S.C. § 1915(e)(2)(B) and § 1915A, a federal court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Dodrill, 696 F.Supp.2d 454, 471 (M.D. Pa. 2010) (1915A); Powell v. Hoover, 956 F. Supp. 564, 568 (M.D. Pa. 1997) (1915(e)(2)(B)(ii)).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. Id. (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). In a § 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege

sufficient facts to support a cognizable legal claim. *See, e.g.*, <u>Taylor v. Books A Million, Inc.</u>, 296 F.3d 376, 378, (5th Cir. 2002); <u>Riddle v. Mondragon</u>, 83 F.3d 1197, 2102 (10th Cir. 1996).

B. <u>Relevant Allegations and Facts of Record</u>

On June 29, 2006, Plaintiff was arrested by the Uniontown Police Department after a search of his vehicle recovered a hidden firearm, controlled substances and drug paraphernalia. At the time, Plaintiff had been released on parole on April 18, 2005 from a five to twenty year sentence that has a maximum expiration date of November 16, 2012 (ECF No. 9-2). As a result, Plaintiff was detained on the basis of the pending criminal charges and a parole violation hearing was held on July 26, 2006 where Parole Agents Dirkins and Jenkins and Hearing Examiner Flick were present.. A preliminary hearing took place on August 22, 2006 where the other occupants of the vehicle claimed that they had hidden the firearm and controlled substances without Plainitff's knowledge. As a result, the Fayette County District Attorney withdrew the charges against him.

On August 29, 2006, Plaintiff was charged with technical violations of his parole based on the traffic stop that occurred on June 29, 2006. Specifically, Plaintiff was charged with violating Condition 5B of his parole, which precluded him from owning or possessing any firearm or other weapon. Count 1 charged him with having three knives in his pocket and Count 2 charged him with having a loaded 357 Smith and Wesson under the driver's seat and a fully loaded Dickson Bulldog .22 caliber under the passenger's seat. He further was charged with violation of Condition 7, which precluding him from possessing drug paraphernalia, after a homemade glass smoking device was found in his jacket (ECF No. 9-4). Plaintiff claims that he was illegally detained from August 22, 2006, the date the criminal charges were withdrawn, through August 29, 2006. On August 29, 2006, Plaintiff was escorted from the Fayette County

5

Jail to the State Correctional Institution at Fayette by Parole Agent Patrick allegedly under fraudulent papers prepared by Agent Collins. A parole revocation hearing was scheduled for September 12, 2006 with respect to the technical violation charges.

On October 19, 2006, Plaintiff received a letter from Adoption Services, Inc. notifying him that he had been named the biological father of a child due to be born on November 10, 2006 and that the mother intended to put the baby up for adoption (ECF No. 9-14).

By Notice Dated March 26, 2007 as recorded on February 21, 2007, Plaintiff was recommitted as a technical parole violator to serve 12 months backtime on his 5 to 20 year sentence (ECF No. 9-7). The Notice further provided that Plaintiff would be reviewed for release on parole in or after August of 2007.

Sometime thereafter, Uniontown police refiled the charges. On August 27, 2007, Plaintiff received another notice from the Board stating that a decision in his case was pending based on the disposition of criminal preliminary charges (ECF No. 9-8). On October 30, 2007, the refiled charges were dismissed (ECF No. 9-9).

On January 10, 2008, the Board rejected Plaintiff's application for reparole stating the following reasons.

> AS RECORDED ON JANUARY 10, 2008, THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:
>
> FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE PAROLE ACT, THE BOARD OF PROBATION AND PAROLE, IN THE EXERCISE OF ITS DISCRETION, HAS DETERMINED AT THIS TIME THAT YOUR BEST INTERESTS DO NOT JUSTIFY OR REQUIRE YOU BEING PAROLED/REPAROLED; AND, THE INTERESTS OF THE COMMONWEALTH WILL BE INJURED IF YOU WERE PAROLED/REPAROLED. THEREFORE, YOU ARE REFUSED PAROLE/REPAROLE AT THIS TIME. THE REASONS FOR THE BOARD'S DECISION INCLUDE THE FOLLOWING:

> YOUR MINIMIZATION/DENIAL OF THE NATURE AND CIRCUMSTANCES OF THE OFFENSE(S) COMMITTED.
>
> YOUR LACK OF REMORSE FOR EHT OFFENSE(S) COMMITTED
>
> THE NEGATIVE RECOMMENDATION MADE BY THE DEPARTMENT OF CORRECTIONS.
>
> YOUR PRIOR HISTORY OF SUPERVISION FAILURES.
>
> YOU WILL BE REVIEWED IN OR AFTER MAY, 2008.

ECF No. 9-10. The Board's decision clearly indicates Plaintiff's maximum expiration date as November 16, 2012.

On December 3, 2008, the Board again rejected Plaintiff's application for reparole stating the following reasons.

> AS RECORDED ON DECEMBER 3, 2008, THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:
>
> FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE PAROLE ACT, THE BOARD OF PROBATION AND PAROLE, IN THE EXERCISE OF ITS DISCRETION, HAS DETERMINED AT THIS TIME THAT: YOUR BEST INTERESTS DO NOT JUSTIFY OR REQUIRE YOU BEING PAROLED/REPAROLED; AND, THE INTERESTS OF THE COMMONWEALTH WILL BE INJURED IF YOU WERE PAROLED/REPAROLED. THEREFORE, YOU ARE REFUSED PAROLE/REPAROLE AT THIS TIME. THE REASONS FOR THE BOARD'S DECISION INCLUDE THE FOLLOWING:
>
> YOUR NEED TO PARTICIPATE IN AND COMPLETE ADDITIONAL INSTITUTIONAL PROGRAMS
>
> THE NEGATIVE RECOMMENDATION MADE BY THE DEPARTMENT OF CORRECTIONS
>
> YOUR PRIOR UNSATISFACTORY PAROLE SUPERVISION HISTORY.
>
> YOUR FAILURE TO DEMONSTRATE MOTIVATION FOR SUCCESS.
>
> YOU ARE TO BE REVIEWED IN OR AFTER OCTOBER 2009

AT YOUR NEXT INTERVIEW, THE BOARD WILL REVIEW YOUR FILE
AND CONSIDER:

WHETHER YOU HAVE SUCCESSFULLY COMPLETED A TREATMENT
PROGRAM FOR: PRESCRIPTIVE PROGRAM PLAN

WHETHER YOU HAVE RECEIVED A FAVORABLE RECOMMENDATION
FOR PAROLE FROM THE DEPARTMENT OF CORRECTIONS.

WHETHER YOU HAVE MAINTAINED A CLEAR CONDUCT RECORD.

ECF No. 9-11.

On November 17, 2009, the Board again rejected Plaintiff's application for reparole

stating the following reasons.

AS RECORDED ON NOVEMBER 17, 2009, THE BOARD OF PROBATION
AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:

FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR
FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED
PURSUANT TO THE PAROLE ACT, THE BOARD OF PROBATION AND
PAROLE, IN THE EXERCISE OF ITS DISCRETION, HAS DETERMINED AT
THIS TIME THAT: YOUR BEST INTERESTS DO NOT JUSTIFY OR
REQUIRE YOU BEING PAROLED/REPAROLED; AND, THE INTERESTS
OF THE COMMONWEALTH WILL BE INJURED IF YOU WERE
PAROLED/REPAROLED.     THEREFORE,     YOU     ARE     REFUSED
PAROLE/REPAROLE AT THIS TIME.  THE REASONS FOR THE BOARD'S
DECISION INCLUDE THE FOLLOWING:

YOUR  NEED  TO  PARTICIPATE  IN  AND  COMPLETE    ADDITIONAL
INSTITUTIONAL PROGRAMS

YOUR RISK AND NEEDS ASSESSMENT INDICATING YOUR LEVEL OF
RISK TO THE COMMUNITY.

YOUR PRIOR UNSATISFACTORY PAROLE SUPERVISION HISTORY

REPORTS, EVALUATIONS AND ASSESSMENTS/LEVEL OF RISK INDICATES
YOUR RISK TO THE COMMUNITY.

YOUR FAILURE TO DEMONSTRATE MOTIVATION FOR SUCCESS.

YOUR LACK OF REMORSE FOR THE OFFENSE(S) COMMITTED

> YOU ARE TO BE REVIEWED IN OR AFTER OCTOBER 2010
>
> AT YOUR NEXT INTERVIEW, THE BOARD WILL REVIEW YOUR FILE AND CONSIDER:
>
> WHETHER YOU HAVE SUCCESSFULLY COMPLETED A TREATMENT PROGRAM FOR VIOLENCE PREVENTION AND PRESCRIPTIVE PROGRAM PLAN

ECF No. 9-12.

On November 30, 2010, the Board again rejected Plaintiff's application for reparole

stating the following reasons.

> AS RECORDED ON NOVEMBER 30, 2010, THE BOARD OF PROBATION AND PAROLE RENDERED THE FOLLOWING DECISION IN YOUR CASE:
>
> FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE PAROLE ACT, THE BOARD OF PROBATION AND PAROLE, IN THE EXERCISE OF ITS DISCRETION, HAS DETERMINED AT THIS TIME THAT: YOUR BEST INTERESTS DO NOT JUSTIFY OR REQUIRE YOU BEING PAROLED/REPAROLED; AND, THE INTERESTS OF THE COMMONWEALTH WILL BE INJURED IF YOU WERE PAROLED/REPAROLED. THEREFORE, YOU ARE REFUSED PAROLE/REPAROLE AT THIS TIME. THE REASONS FOR THE BOARD'S DECISION INCLUDE THE FOLLOWING:
>
> YOUR PRIOR UNSATISFACTORY PAROLE SUPERVISION HISTORY.
>
> YOUR FAILURE TO DEMONSTRATE MOTIVATION FOR SUCCESS.
>
> YOUR MINIMIZATION OF THE NATURE AND CIRCUMSTANCES OF THE OFFENSE(S) COMMITTED.
>
> OTHER FACTORS DEEMED PERTINENT IN DETERMINING THAT YOU SHOULD NOT BE PAROLED: YOUR FAILURE TO PROVIDE INSIGHT INTO THE THINKING ERRORS THAT LED YOU TO YOUR PAROLE FAILURE.
>
> YOU ARE TO BE REVIEWED IN OR AFTER MAY 2011
>
> AT YOUR NEXT INTERVIEW, THE BOARD WILL REVIEW YOUR FILE AND CONSIDER:

WHETHER YOU HAVE MAINTAINED A FAVORABLE RECOMMENDATION FOR PAROLE FROM THE DEPARTMENT OF CORRECTIONS.

WHETHER YOU HAVE MAINTAINED A CLEAR CONDUCT RECORD.

ECF No. 9-13.

Finally, Plaintiff makes cursory allegations that Dr. Herbick of SCI-Fayette is liable for not removing a golfball sized tumor and for repeatedly charging him $5.00 per medical visit when his is a chronic condition for which the co-pay requirement does not apply. He claims he was aware of the condition after one year back to SCI-Fayette. Included in his Exhibits is Grievance No. 330303 dated August 9, 2010 wherein he complains about paying the $5.00 co-pay and requests a refund and removal of the tumor (ECF No. 9-16, p. 2). It appears that DOC rejected this grievance because it was not filed within fifteen days after the event upon which the claims were based (ECF No. 9-16, p. 1). Dr. Herbick is not identified in the Grievance.

## C. Liability under 42 U.S.C. § 1983

Plaintiff seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior. Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly,

individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207. *See also* Keenan v. Philadelphia, 983 F.2d 459, 466 (3d Cir. 1992); Andrews v. Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990).

Moreover, a supervising public official has no affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates. Notwithstanding, when a supervising official knowingly permits a continuing custom or policy that results in harm to the plaintiff, 1983 liability may attach. Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989) (Colburn I). However, at a minimum such liability may be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." *Id*. (quoting Chinchello, 805 F.2d at 133). *See also* Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir. 1997).

## D. Limitations Periods

Plaintiff seeks recovery against Defendants under 42 U.S.C. § 1983. This statute does not contain a specific federal statute of limitations period for filing civil rights actions thereunder. Instead, the limitations period for civil actions brought under this statute is determined by state law. Such actions are classified as personal injury claims for the purpose of determining the limitations period under the applicable state law. Wilson v. Garcia, 471 U.S.

261, 272-76 (1985). The limitations period for personal injury actions under Pennsylvania law is two years. 42 Pa. Cons. Stat. Ann. § 5524. Thus, under Pennsylvania law, the applicable limitations period for civil rights actions asserted under 42 U.S.C. §§ 1983 is two years.

In Pennsylvania, the limitations period begins to run from the time the plaintiff suffers the injury or has reason to know of the injury. Morgan v. Johns-Manville Corp., 354 Pa. Super. 58, 61-62, 511 A.2d 184, 186, *allocatur denied*, 514 Pa. 636, 522 A.2d 1105 (1986). Federal law, however, governs the date of accrual for claims brought under § 1983. Gibson v. Superintendent of New Jersey Dept. of Law and Public Safety, 411 F.3d 427, 435 (3d Cir. 2005), *cert. denied*, 547 U.S. 1035 (2006). Under federal law, much like in Pennsylvania, the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action. Gibson, 411 F.3d at 435 (quoting Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998). *See also* Wallace v. Kato, 549 U.S. 384, 390 (2007) ("[I]t is the standard rule that [accrual occurs] when the plaintiff has a complete cause of action ... that is, when the plaintiff can file suit and obtain relief") (internal quotations and citations omitted).

Plaintiff's Complaint is dated November 5, 2010. The events Plaintiff references in his complaint occurred over two years prior to his filing the complaint in this case. The only actions that occurred during the previous two-year period, *i.e.*, between November 10, 2008 and November 10, 2010, are the Board's denials of Plaintiff's parole applications and his claim of denial of medical treatment. These claims are discussed below.

E. Parole Denial

As an initial matter, the only named defendant relevant to Plaintiff's allegations concerning his parole denial is the Pennsylvania Board of Probation and Parole (the Board). The

Board can not be sued because "it is not a 'person' within the meaning of Section 1983." Thompson v. Burke, 556 F.2d 231, 232 (3d Cir. 1977). To this end, in Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989), the Supreme Court again concluded that state agencies are not "persons" subject to liability in § 1983 actions brought in federal court. Accordingly, since the Parole Board is clearly an agency or arm of the Commonwealth of Pennsylvania, it is not a person and may not be sued under § 1983. Notwithstanding, the discussion below shows that it would be futile to allow Plaintiff to amend his complaint yet again to join any "proper" defendants.

As an initial matter, it must be noted that Plaintiff does not have a constitutionally protected interest in release on parole. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979). Further, the existence of a state parole system alone does not create a constitutionally-protected interest. Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). Instead a liberty interest for purposes of parole would only arise if the state code requires a parole board to make its decision based upon the existence or absence of a particular factor.

The Pennsylvania Probation and Parole Act does not grant Pennsylvania state prisoners any constitutionally-protected liberty interest in being released on parole or reparole prior to the expiration of their maximum terms.[1] Pennsylvania law unambiguously provides that a prisoner

_____

1. *See, e.g.*, McFadden v. Lehman, 968 F. Supp. 1001, 1004 (M.D. Pa. 1997) (Pennsylvania has not created an enforceable liberty interest in parole, rehabilitative pre-release programs, or in therapy programs); Rodgers v. Parole Agent SCI-Frackville, Wech, 916 F. Supp. 474, 476 (E.D. Pa. 1996); McCrery v. Mark, 823 F. Supp. 288 (E.D. Pa. 1993); Rogers v. Pennsylvania Bd. of Probation and Parole, 555 Pa. 285, 724 A.2d 319 (1999) (holding that the grant of parole for Pennsylvania prisoners is nothing more than a possibility; it merely constitutes favor granted by the state as a matter of grace and mercy); Tubbs v. Pennsylvania Bd.. of Probation and Parole, 620 A.2d 584, 586 (Pa. Commw. Ct. 1993) ("it is well settled under Pennsylvania law that a prisoner has no constitutionally protected liberty interest in being released from confinement

13

is <u>not entitled</u> to release from prison until the expiration of his maximum sentence.[2]  Nothing in the Pennsylvania Parole Act (or any other provision of Pennsylvania law) requires the Board to release a prisoner on parole prior to the expiration of his maximum term.  The Board has complete discretion to determine whether an inmate is sufficiently rehabilitated such that he will be permitted to serve the remainder of his sentence outside the prison walls on parole.  Although a prisoner is <u>eligible</u> for parole at the end of his minimum term, nothing in Pennsylvania law or the United States Constitution requires a prisoner to be released at such time.[3]

Plaintiff seems to be raising the claim that the Board's failure to release him on reparole after he had completed serving his backtime sentences was a violation of his constitutional rights.  Specifically, he seems to suggest that, upon expiration of his backtime sentences, he was entitled to release on reparole.  However, "[a] recommitted parole violator has no right to reparole at the expiration of a reparole eligibility date, but the violator does have a right to apply for reparole at such expiration."  <u>Johnson v. Pennsylvania Board of Probation and Parole</u>, 676 A.2d 1242 (Pa. Commw. 1996) .  In other words, once parole is revoked, a former parolee returns to the status of a prisoner who has no liberty interest in being paroled again.  <u>Wise v. Pennsylvania Bd. of Probation and Parole</u>, Civil No. 97-4812, 1998 WL 188845, at *3 (E.D. Pa. April 21, 1998) ("A prisoner who is recommitted following a parole violation loses his status as a

---

prior to the expiration of his sentenced maximum term . . . the [Board] makes each decision on a case by case basis, and prisoners have no guarantees that parole will ever be granted"), *appeal denied*, 637 A.2d 295 (Pa. 1993).

2.  A prisoner's sentence is his maximum term.  <u>Krantz v. Pennsylvania Bd. of Probation & Parole</u>, 86 Pa. Commw. 38, 41, 483 A.2d 1044, 1047 (1984).  The significance of the minimum sentence is that it establishes a parole eligibility date; the only "right" that can be asserted upon serving a minimum sentence is the "right" to apply for parole and to have that application duly considered by the Board.  *Id*.

3.  The existence of a state parole system alone does not create a constitutionally-protected interest.  <u>Board of Pardons v. Allen</u>, 482 U.S. 369, 373 (1987).

parolee and has no right to be automatically released on parole after the expiration of his backtime mandated by the Board."); Counts v. Pennsylvania Bd. of Probation and Parole, 487 A.2d 450, 453 (Pa. Commw. 1985) ("The Board's recommitment order revoking his parole and mandating that he serve backtime stripped him of his status as a parolee whereby he lost his constitutionally-protected liberty interest."). Such an individual has no legitimate expectation of being reparoled at the expiration of his backtime. Franklin v. P.O. Edline, Civil No. 93-3871, 1994 WL 192060, at *3 (E.D. Pa. 1994) ("Finally, the 'backtime' imposed by the Board does not automatically entitle Franklin to release after that period."). Thus, Plaintiff has stated no violation of his procedural due process rights in the Board's failure to release him on reparole following service of his backtime sentences.

Notwithstanding, several courts, including the Court of Appeals for the Third Circuit, recognize that, even though an inmate has no protectable liberty interest in parole that implicates procedural due process, his substantive due process rights may be violated if parole is denied by arbitrary government action.[1] In this regard, the constitutional right to "substantive due process" protects individuals against arbitrary governmental action, regardless of the fairness of the procedures used to implement them.[2] Some courts have determined that decisions to grant or deny parole may violate a prisoner's right to substantive due process if such decisions are based on arbitrary and capricious factors. The Supreme Court has declined to set forth a precise rule that defines the scope of impermissible "arbitrary" conduct for purposes of applying the

---

1. *See, e.g.*, Monroe v. Thigpen, 932 F.2d 1437, 1442 (11th Cir. 1991); Newell v. Brown, 981 F.2d 880, 886 (6th Cir. 1992), *cert. denied*, 510 U.S. 842 (1993); Block v. Potter, 631 F.2d 233, 236 (3d Cir. 1980); Carter v. Kane, 938 F. Supp. 282 (E.D. Pa. 1996).

2. *See also* Collins v. Harker Heights, 503 U.S. 115, 126 (1992) (the Due Process Clause was intended to prevent government officials from abusing power, or employing it as an instrument of oppression); Wolff v. McDonnell, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government.").

substantive component of the Due Process Clause.  Nonetheless, the Court has clarified that governmental conduct does not violate a person's substantive due process rights unless it amounts to an abuse of official power that "shocks the conscience."  County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).

Applying this standard, the United States Court of Appeals for the Third Circuit rejected substantive due process challenges to state parole board decisions in Coady v. Vaughn, 251 F.3d 480,  487 (3d Cir. 2001), and Hunterson v. DiSabato, 308 F.3d 236, 246-47 (3d Cir. 2002).  In Coady, the prisoner insisted that the decision of the Pennsylvania Board of Probation and Parole violated substantive due process because the board used constitutionally impermissible criteria to deny parole, applied erroneous descriptions of the conduct underlying his offense, and considered false information.  The Third Circuit rejected Coady's claims on the grounds that "federal courts are not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision."  Coady, 251 F.3d at 487.

In Hunterson v. DiSabato, the Third Circuit reversed an order granting the writ to a New Jersey inmate who claimed that a parole board decision imposing a five-year future eligibility term was arbitrary, capricious, and an unreasonable abuse of discretion.  As the Third Circuit explained:

> this type of constitutional challenge to a state [parole] proceeding is not easily mounted.  We have made clear that the federal courts, on habeas review, are not to second-guess parole boards, and the requirements of substantive due process are met if there is some basis for the challenged decision .... The relevant level of arbitrariness required in order to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times conscience shocking or deliberately indifferent.

<u>Hunterson</u>, 308 F.3d at 246-47 (citations and internal quotation marks omitted).

In the case at bar, the Board's specified reasons for denying Plaintiff's parole application are, on the face of them, in accordance with its statutory directives. In granting parole, the Board is required to consider the nature and character of the offense committed, the general character and history of the prisoner, the written or personal statement or testimony of the victim or victim's family, and the recommendations of the trial judge, the district attorney and of each warden or superintendent who has had control over the applicant. 61 Pa. Stat. § 331.19. Moreover, the Board is prohibited from granting parole unless the Commonwealth will not be injured thereby. *See* 61 Pa. Stat. § 331.21(a).[3]

In reviewing the Board's exercise of discretion in denying an application for parole, this Court's only role "is to insure that the Board followed criteria appropriate, rational and consistent with the statute and that its decision is not arbitrary and capricious nor based on impermissible considerations." <u>Block v. Potter</u>, 631 F.2d 233, 236 (3d Cir. 1980). The Board identified legitimate reasons for exercising its discretion in denying petitioner's applications for early release from prison. The Board's reasons for denying his parole application are, on the face of them, in accordance with its statutory mandate to protect the well being of the Commonwealth's citizens. Nothing in the record before this court suggests that the Board exercised its discretion in either an arbitrary or capricious manner. As such, Plaintiff has failed to demonstrate that he is entitled to habeas corpus relief under the substantive prong of the Due Process Clause. *Accord* <u>Banks v. Pennsylvania Bd. of Probation and Parole</u>, 2004 WL 906296, at *4 (E. D. Pa. April 28, 2004) ("[T]he Board's decision that Petitioner may require continued participation in a prescriptive program does not constitute an arbitrary or capricious decision."); <u>Shaffer v.</u>

Meyers, 338 F.Supp.2d 562, 566 (M.D. Pa. 2004) ("On the basis of the record before the court, and the stated reasons for the Parole Board's denial of parole, the court concludes that there was a rational basis for the denial of parole."); Cohen v. Pennsylvania Bd of Probation and Parole, 1998 WL 834101 (E.D. Pa. Dec. 2, 1998) (holding that the denial of parole despite recommendation from prison psychiatrist does not state a violation of substantive due process).

Here, Plaintiff has failed to make any allegations that demonstrate that the Board acted in an arbitrary fashion. As such, he has not stated a constitutional violation with respect to the Board's actions in denying him reparole.

Plaintiff also seems to suggest that the Board's actions in denying his applications for reparole violated the *Ex Post Facto* Clause of the United States Constitution. U.S. Const. Art. 1, § 10. The Supreme Court repeatedly has reiterated that "[t]o fall within the *Ex Post Facto* prohibition, a law must be retrospective--that is it must apply to events occurring before its enactment--and it must disadvantage the offender affected by it by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441 (1997) (internal citation and quotation omitted). In analyzing whether a law violates the *Ex Post Facto* clause, the courts are required to determine whether the law resulted in "a sufficient risk of increasing the measure of punishment attached to the covered crimes." California Dep't of Corrections v. Morales, 514 U.S. 499, 509 (1995).

Thus, in order to show that he is entitled to relief in this action, Plaintiff must show that the Board's decisions denying his applications were dictated by a change in the Pennsylvania parole laws that, on their face or as applied to him, created a significant risk of increasing the severity of his punishment. For the reasons that follow, Plaintiff has not met this burden.

---

3. As set forth above, the Parole Act was repealed by 2009 Pa. Laws 33 and the statutes

When Plaintiff committed his crime, the relevant 1941 parole statute, 61 Pa. Stat. § 331.1, provided as follows.

> The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth.

Act 1941, Aug. 6, P.L. 861 § 1 (West 1995).

In 1995, the Board's parole procedures became the subject of strict scrutiny after several violent criminals previously released on parole by the Board were charged with committing serious violent offenses. One of these criminals, Robert "Mudman" Simon, shot and killed a New Jersey Police Officer during a routine traffic stop three months after his release. These events precipitated an intense investigation of Pennsylvania's parole system by the Senate Judiciary Committee of the Pennsylvania General Assembly, who reported the results of the investigation to the Governor. *See* Stewart v. Pennsylvania Board of Probation and Parole, 714 A.2d 502, 504, n.1 (citing Chairman's Report: Investigation into the Parole of Robert Simon, Senate of Pennsylvania Judiciary Committee, 179th Gen. Assembly 1995 Sess. 1-6 (February 1996)). As a result of this investigation, the Judiciary Committee made recommendations that the emphasis of Pennsylvania's parole philosophy should be changed from prisoner rehabilitation to the protection of public safety, deterrence of crime and incapacitation of criminals. *Id.*

---

currently are codified at 61 Pa. Cons. Stat. §§ 6132 and 6135 (2010).

In 1995 and again in 1996, the Parole Act was amended to implement the suggested changes in parole policy for violent offenders. Section 1 of the Parole Act, 61 P.S. § 331.1, was amended as follows.

> In providing these benefits to the criminal justice system, the board shall first and foremost seek to protect the safety of the public. In addition to this goal, the board shall address input by crime victims and assist in the fair administration of justice by ensuring the custody, control and treatment of paroled offenders.

Amended Dec. 18, 1996, P.L. 1098, No. 164, § 1.

Also, section 34 of the Parole Act was amended by adding a new section that prohibited the Board from acting upon a parole application for a violent offender unless the inmate had served at least one year in a prerelease center. *See* Myers v. Ridge, 712 A.2d 791, 795-96 (Pa. Commw. 1998), *appeal denied*, 742 A.2d 173, 560 Pa. 677 (1999). Also in section 34.1, the legislature added a definition for the term "crime of violence" to include murder of the third degree, voluntary manslaughter, rape, sexual assault, involuntary deviate sexual intercourse, robbery, arson, aggravated assault or kidnapping, including a conviction for attempt to commit the above-listed crimes. *Id.*

In addition, several internal changes were implemented with respect to the Board's procedures for approving parole applications for criminals convicted of violent offenses. One change concerned the number of votes needed to approve a recommendation to grant parole. Specifically, the revised parole guidelines imposed a requirement for three signatures instead of two before a violent offender may be approved for release on parole. The voting requirements for sex offenders changed from three out of five to five out of nine affirmative votes for parole to be granted. In addition, the Board was directed to certify that the rights of victims were fully

complied with whenever the Board approved the parole application for the release of a violent offender. Myers, 712 A.2d at 798.

Finally, in 2009, the General Assembly repealed the Parole Act and enacted the Prisons and Parole Code as set forth in Act. No. 2009-33, Aug. 11, P.L. 147, No. 33, § 11(b) effective date October 13, 2009. The current Act has been consolidated and is currently found at Sections 6101-6309 of the Prisons and Parole Code, 61 Pa. Cons. Stat. §§ 6101-6153.

With respect to Plaintiff's challenge, in order to determine whether there is a *ex post facto* violation, a court must determine first, whether there was a change in the law or policy which has been given retrospective effect, and second whether the offender was disadvantaged by the change. To violate the Ex Post Facto Clause, a retroactive change in the law or policy must create a sufficient risk of increasing the measure of punishment attached to the covered crimes; a speculative and attenuated possibility of increasing the measure of punishment is not enough. Richardson v. Pennsylvania Bd. of Probation and Parole, 423 F.3d 282, 287-88 (3d Cir. 2005) (internal quotation marks, ellipses and citations omitted).

The Court of Appeals for the Third Circuit reiterated this holding in Taylor v. Pennsylvania Bd. of Probation and Parole, 181 Fed. App'x 253, 254 (3d Cir. 2006).

> Taylor concentrates on the first prong of the analysis, and we will assume for present purposes that he satisfies that inquiry. However, he must also adduce some evidence that this new law or policy disadvantaged him by creating a significant risk of increasing his punishment. The mere intuition that stricter standards are more likely to lead to an adverse result is insufficient. Rather, Taylor must provide such evidence as indications that he would have been a good candidate for parole under the old law, comparisons of parole rates for prisoners with similar convictions before and after the 1996 amendments, and the extent to which the reasons given for denying him parole would not have been considered before 1996.

> Taylor has made no such showing and, thus, fails the second prong
> of the ex post facto analysis. Accordingly, we will affirm the
> judgment of the District Court.

Taylor, 181 Fed. App'x at 254-55 (internal quotations and citations omitted).

The Court revisited this issue in Shaffer v. Meyers, 163 Fed. App'x. 111 (3d Cir. 2006) wherein the petitioner had been convicted of a sexual assault in 1990 and was denied release on parole in 2004 due to his failure to have completed a sex offender program and the lack of a favorable recommendation from corrections officials. In its review of this claim, the Court of Appeals explained as follows.

> . . . With regard to the Ex Post Facto Clause, we emphasize that
> there are two prongs to a successful claim: Shaffer must show not
> only that there has been a change in law or policy which has been
> given retrospective effect but also that its retrospective application
> to him created a real risk of increasing the measure of his
> punishment.
>
> . . .
>
> Although we do not require a petitioner to provide evidence which
> is compelling to the same degree, "our precedents require that a
> petitioner proffer at least some evidence of disadvantage to warrant
> habeas relief." Shaffer has not done so. Indeed, it is not even clear
> that he has met the first prong of the analysis, *i.e.*, shown that the
> Board used new standards, retroactively applied, in denying him
> parole. Prima facie it does not seem likely that the criteria cited by
> the Board in Shaffer's case-participation in a treatment program for
> sex offenders, the recommendation of the Department of
> Corrections, Shaffer's conduct record and whether he completed
> any prescribed programs-would not have been considered by the
> Board pre-amendment, and Shaffer cites no evidence to persuade
> us otherwise. But even if we assume that the Board would have
> used different criteria pre-amendment, Shaffer has not provided
> adequate reasons to support the contention that application of those
> criteria would likely have resulted in his release on parole.

Shaffer, 163 Fed. App'x at 113-114 (internal quotations and citations omitted).

The Court expanded this holding in <u>Pleaze v. Klem</u>, 335 Fed. App'x. 168, 170 (3d Cir. 2009). In that case, petitioner was convicted of robbery on March 29, 1999. On April 25, 2001, the DOC issued a Prescriptive Program Plan recommending that he participate in various institutional programs, including sexual offender orientation. Petitioner subsequently completed the recommended programs, including the sexual offender orientation. Following his parole eligibility date of September 29, 2004, the Board denied him parole based on, *inter alia*, his failure to complete additional institutional programs, including, additional sexual offender. Petitioner argued that the Parole Board violated his rights under the *Ex Post Facto* Clause by applying to him the 2000 Sex Offender Treatment statute, 42 Pa. Cons. Stat. § 9718.1, which requires prisoners to participate in a DOC program of counseling or therapy to be eligible for parole. The Court disagreed.

> First, the DOC had the ability to, and did, deny parole to some inmates who failed to undergo sexual offender treatment prior to the passage of § 9718.1. Further, the Parole Board has wide discretion to make decisions regarding parole based on a variety of factors. Although the Board cited Pleaze's failure to complete additional sexual offender programs as a factor in denying him parole (though it never referenced § 9718. 1), Pleaze's successful completion of an advanced sexual offender program was one of many factors the Board could consider in evaluating his parole applications. Nothing indicates that the Board intended to retroactively apply the requirements of § 9718.1 to Pleaze or that it made its decision regarding his parole based on improper considerations. The Board never claimed that Pleaze was ineligible for parole by barring him from applying or refusing to consider his application, which is the remedy for failure to comply with § 9718.1.

> .  .  .

> Even were we to assume that the Parole Board did apply § 9718.1 to Pleaze, his argument still fails because he cannot meet the second factor under Richardson, requiring him to show that he "was disadvantaged by the change" in law. Pleaze carries the ultimate burden of establishing that the measure of punishment

itself has changed and he must show that as applied to his own sentence the law created a significant risk of increasing his punishment.

Pleaze argues that although the Parole Board did not explicitly cite § 9718.1, it clearly applied it in denying him parole, and that its retroactive application directly resulted in his increased punishment because but for the statute he would not have been required to take a sex offender program. But a speculative and attenuated possibility of increasing the measure of punishment is not enough of a showing to meet Pleaze's burden. . . . [U]nlike the prisoner in Mickens-Thomas, Pleaze has not demonstrated that but for § 9718.1 he would have been paroled, or that other similarly situated prisoners were paroled prior to the passage of the statute.

Pleaze, 335 F.3d at 171-172 (internal quotations and citations omitted).

The most recent decision by the Court of Appeals for the Third Circuit is set forth in Newman v. Beard, 617 F.3d 775 (3d Cir. 2010). Newman was found guilty in 1987 of committing two rapes and related sexual offenses and was sentenced to twenty to forty years imprisonment. After he became eligible for parole in 2007, Newman met with a parole hearing examiner for an interview. The hearing examiner noted that Newman had not attended the sex offender treatment program (SOP) and stated that the Parole Board required the completion of the SOP before parole would be granted. On April 18, 2007, the Board denied Newman's parole application. Newman alleged that the Board improperly applied Pennsylvania's Sex Offender treatment statute stating that he was sentenced in 1988 and the statute was not enacted until 2000.

In analyzing his claim, the Court assumed that Newman had met the first prong of his *Ex Post Facto* challenge notwithstanding that the Board's denial did not mention the Sex Offender Treatment Act. *Id.* at *8. Analyzing Newman's claim in that context, the Court denied relief noting that Newman had not alleged the second prong, *i.e.*, that the statute created a significant

risk of increasing his punishment.  In this regard, the Court found that Newman had not alleged that he would have been paroled but for the new statute and that similarly situated inmates were paroled before the passage of the statute.

> The Supreme Court has recognized that because most offenders will eventually return to society, a paramount objective of the corrections system is the rehabilitation of those committed to its custody.  Inasmuch as rehabilitation is a legitimate penological objective and the Supreme Court is satisfied that recognition of one's responsibility for past offenses is a critical first step toward rehabilitation, Newman cannot show that the Parole Board's alleged retroactive application of § 9718.1 created a significant risk of increasing his punishment.  Accordingly, the District Court properly dismissed his Ex Post Facto claim.[FN]

> > FN10. As noted above, the Parole Board could have legitimately considered Newman's "general character and history" even under the statute in effect in 1988 when he was sentenced.  See 61 P.S. § 331.19 (1988).

Newman, 2010 WL at *9 (internal quotations and citations omitted).

In Plaintiff's case, the Board's most recent determination specifically provides the factors the Board considered in its decision denying Plaintiff reparole; namely, his unsatisfactory parole supervision history, his failure to demonstrate motivation for success, his minimization of the nature of the offense, and his failure to provide insight into the thinking errors that led him into parole failure.  These factors were applicable at the time of Plaintiff's criminal conduct and are all factors rationally related to any parole decision, whether made before or after 1996.  *See, e.g.*, Farmer v. McVey, Civil No. 09-166, 2011 WL 776213, 12 (M.D. Pa. Jan. 24, 2011) (holding that inmate did not show that the change in the law created an "individualized disadvantage" for him in securing parole because it was evident that the denial of parole was not a function of changes in the law, but rather was a product of the inmate's recidivism and poor risk for parole); Sheffield v. Pennsylvania Dept. of Corrections, Civil No. 07-2046, 2009 WL 210490 (Jan. 26, 2009)

(holding that the Board's denial of reparole request based upon the negative recommendation of DOC, assessments of the inmate's prior history of parole supervision failures, and his need to participate in and complete institutional programs did not violate *ex post facto* clause of federal constitution as the inmate failed to show that he had been disadvantaged in any way by the new laws or that he would have been more likely to be granted parole before the new laws were passed); <u>Petty v. Pennsylvania Bd. of Probation and Parole</u>, Civil No. 10-279, 2010 WL 4321601, 11 (E.D. Pa. Oct. 6, 2010) (holding that the mere fact that an inmate was not re-paroled at the conclusion of the back time sentence did not necessarily mean that some sort of "additional punishment" was imposed upon him in violation of the *Ex Post Facto* Clause as the punishment for his convictions lawfully includes incarceration to the maximum imprisonment date under Pennsylvania law).

Plaintiff presents no evidence supporting an inference that he has been disadvantaged in some way by consideration of the 1996 amendments to Pennsylvania's parole law or by the new Sex Offender Treatment law. Specifically, he fails to offer any evidence that he was a good candidate for parole under the criteria in effect before 1996 and makes no statistical showing that inmates convicted of the same charges were more likely to be paroled before the 1996 and 2000 changes to the legislation. *See* <u>Richardson</u>, 423 F.3d at 284 (stating that the Pennsylvania Parole Act allows the Board to consider, *inter alia*, "the prisoner's complete criminal record, conduct while in prison, 'physical, mental[,] and behavior condition and history,' the 'nature and circumstances of the offense committed,' and 'the general character and background of the prisoner' " (quoting 61 Pa. Cons. Stat. § 331.19)). Thus, there is no indication that the Board's action in denying Petitioner parole was the result of an illegal application of the Pennsylvania Parole laws. Consequently, Plaintiff has not demonstrated that the Board, or any member

thereof, violated his rights as protected by the *Ex Post Facto* Clause. Thus, it would be futile to allow him to amend his complaint with respect to his parole violation claims.

## F. Medical Treatment

Plaintiff makes a bald allegation that Dr. Herbick denied him medical treatment by failing to remove a tumor that he did not have before he was incarcerated. He does not make any allegation as to when he asked Dr. Herbick to remove the tumor and when he allegedly refused to do so. The only information somewhat relative to this claim is set forth in Grievance No. 330303, which was returned to Plaintiff because it was filed outside the fifteen day limit. Dr. Herbick is not named in this Grievance, nor is he a defendant in the present action.

With respect to Plaintiff's claims of inadequate medical treatment, liability can be assessed only against persons with authority to make treatment decisions concerning Plaintiff's medical care. *See* Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir.2004) (holding that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference). None of the named Defendants, including Defendant Beard, have any ability to make decisions regarding Plaintiff's medical care. Moreover, there is no record evidence that any of the named Defendants interfered with Plaintiff's prescribed medical treatment for non-medical reasons. Consequently, none of the Defendants can be held to have been deliberately indifferent to Plaintiff's medical needs. *Accord* Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (warden and commissioner cannot be considered deliberately indifferent by failing to directly respond to a medical complaint by a prisoner who was receiving treatment by the prison doctors).

Moreover, it would be futile to allow Plaintiff to amend his Complaint to add Dr. Herbick as a Defendant because Plaintiff has procedurally defaulted his claim against Dr. Herbick because he failed to name him in his grievance. In this respect, pursuant to 42 U.S.C. § 1997(e)(a) of the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The pertinent Pennsylvania Department of Corrections (DOC) policy establishing what administrative remedies are available to prisoners in DOC institutions was promulgated in DC-ADM 804. DC-ADM 804 explicitly requires that the prisoner specifically name individuals in the grievance in order to exhaust under the PLRA.

In Spruill, the Court of Appeals was confronted with a situation where, although the Pennsylvania prisoner had filed a grievance, the grievance failed to mention one of the people whom the prisoner subsequently named as a defendant in a civil rights action based on the same events as the grievance. The Court held that because the grievance did not mention the particular individual by the name of Brown, the prisoner-plaintiff had procedurally defaulted his claims against Brown. The holding of Spruill, in this respect, is precisely on point:

> [t]he passage quoted above regarding the contents of the grievance is also the only section of the Grievance System Policy requiring that the grievance identify specific persons. On this matter, the text is mandatory, or nearly so: "The inmate shall include a statement of the facts relevant to the claim.... The inmate should identify any persons who may have information that could be helpful in resolving the grievance. The inmate should also include information on attempts to resolve the matter informally." DC-ADM 804, Part VI.A.1.d. To the extent that Brown's identity is a "fact[ ] relevant to the claim"-and it is-it was mandatory for Spruill to include it. To the extent that Brown was a "person[ ] who may have information" or someone with whom Spruill made "attempts to resolve the matter informally"-and he was-Spruill was required to identify Brown if practicable. Spruill did not, and has offered

> no explanation for his failure to do so. Any grievance against
> Brown would now be time-barred. See DC-ADM 804, Part
> VI.A.1.e ("Grievances must be submitted by the inmate ... within
> fifteen (15) working days after the events on which the claims are
> based."). Thus Spruill has procedurally defaulted a claim against
> Brown by failing to identify him.

Spruill, 372 F.3d at 234.

The United States Supreme Court adopted a similar holding in Woodford v. Ngo, 548
U.S. 81 (2006) wherein it held that an untimely or otherwise procedurally defective
administrative grievance or appeal does not satisfy the PLRA's mandatory exhaustion
requirement.

> Because exhaustion requirements are designed to deal with parties
> who do not want to exhaust, administrative law creates an
> incentive for these parties to do what they would otherwise prefer
> not to do, namely, to give the agency a fair and full opportunity to
> adjudicate their claims. Administrative law does this by requiring
> proper exhaustion of administrative remedies, which "means using
> all steps that the agency holds out, and doing so properly (so that
> the agency addresses the issues on the merits)." This Court has
> described the doctrine as follows: "[A]s a general rule ⋯ courts
> should not topple over administrative decisions unless the
> administrative body not only has erred, but has erred against
> objection made at the time appropriate under its practice." Proper
> exhaustion demands compliance with an agency's deadlines and
> other critical procedural rules because no adjudicative system can
> function effectively without imposing some orderly structure on
> the course of its proceedings.

Woodford, 548 U.S. at 90-91 (internal citations, quotations and footnotes omitted). The Court

further noted that "[c]onstruing § 1997e(a) to require proper exhaustion also fits with the general

scheme of the PLRA, whereas respondent's interpretation would turn that provision into a largely

useless appendage. The PLRA attempts to eliminate unwarranted federal-court interference with

the administration of prisons, and thus seeks to afford corrections officials time and opportunity

to address complaints internally before allowing the initiation of a federal case." Woodford, 548

U.S. at 93. The Court concluded that the benefits of exhaustion could only be realized if the prison grievance system is given a fair opportunity to consider the claims, which required the grievant to comply with the procedural rules. *Id*. at 94.

In the instant action, it does not appear that Dr. Herbick has been identified in Plaintiff's Grievance . Thus, it appears that claims against Dr. Herbick for actions that have taken place within the two years preceding the filing of this lawsuit are procedurally barred. *Accord* Williams v. Pennsylvania, Dept. of Corrections, 146 Fed. App'x 554, 557 (3d Cir. 2005) ("his [*i.e* ., the prisoner's] failure to identify defendants Herbert, Street, or Smith in either of his two grievances, means that he failed to exhaust his administrative remedies in accordance with Pennsylvania's grievance process and the PLRA."); Wishnefsky v. Salameh, Civil No. 11-1680, 2011 WL 4090495, 3 (Sept. 15, 2011) (holding that the District correctly Court determined that inmate had failed to properly exhaust because he failed to mention the specific doctor in the grievance he filed); McCullough v. Miller, Civil No. 06-514, 2008 WL 4361254, at *5 (Sept. 24, 2008) (same); Buehl v. Beard, Civ. A. No. 03-1313, 2007 WL 1830616 (W.D.Pa. June 25, 2007) (same). Accordingly, it appears futile to allow Plaintiff the opportunity to amend his complaint to add Dr. Herbick with respect to the present claim.[1]

## G. Unlawful Detention

While the Court does not construe any specific allegations with regard to this claim, Plaintiff attached an Order dated January 21, 2009, which appears to vacate a sentence entered against him on April 3, 2008. Plaintiff filed this action within two years of the date the sentence was vacated. The only claim Plaintiff can make relevant to this occurrence is for malicious prosecution as the statute of limitations on malicious prosecution claims does not begin to run

until the underlying criminal proceedings are terminated in plaintiff's favor. Crawford v. Miller, 269 Fed. App'x 178, 180 (3d Cir. 2008) (citing Rose v. Bartle, 871 F.2d 331, 348 (3d Cir. 1989)). Thus, his malicious prosecution claim is timely. Notwithstanding, he can not allege the essential fifth element of a malicious prosecution claim.

To prove malicious prosecution, a plaintiff must show that: 1) the defendants initiated a criminal proceeding; 2) the criminal proceeding ended in plaintiff's favor; 3) the proceeding was initiated without probable cause; 4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and 5) the plaintiff suffered deprivation of a liberty consistent with the concept of seizure as a consequence of a legal proceeding. Gallo v. City of Philadelphia, 161 F.3d 217 (3d Cir. 1998) (citing Albright v. Oliver, 510 U.S. 266 (1994) (holding that while substantive due process would not provide a basis for relief, the Fourth Amendment might).

Here, Plaintiff has set forth no allegation that he has suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. See California v. Hodari D., 499 U.S. 621, 625-27 (1991) ("seizure is a show of authority that restrains the liberty of a citizen;" actual physical touching is not required); County of Sacramento v. Lewis, 523 U.S. 833, 844 (1998) (seizure is "government termination of freedom of movement intentionally applied"). He was incarcerated due to his technical parole violations. Plaintiff does not identify any pretrial restraints on his liberty or for that matter, any restrictions-onerous or otherwise-that were imposed upon him due to the 2008 sentence. Consequently, although Plaintiff's malicious prosecution claim is timely, he cannot state a claim upon which relief may be granted. Consequently, he is not entitled the opportunity to file yet another amended complaint.

---

[1] Of course, Plaintiff is free to file a separate lawsuit raising this claim after he has properly

III.    **CONCLUSION**

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss filed by Defendants Jeffrey Beard and the Pennsylvania Board of Probation and Parole (ECF No. 18) be granted and that the Motion to Dismiss filed by Defendants Larry Medlock and Fayette County (ECF No. 21) be granted.  It is further recommended that the Complaint be dismissed with prejudice against the remaining John Doe Defendants under 28 U.S.C. § 1915A as it fails to state a claim upon which relief may be granted and it would be futile to allow Plaintiff to file another amended complaint in this matter.

Pursuant to the Magistrate Judges Act, 28 U.S.C.  § 636(b)(1)(B) and (C), and the Local Civil Rules, the parties are allowed to file objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Failure to timely file objections will constitute a waiver of any appellate rights.  Any party opposing objections may file their response to the objections in accordance with the Local Rules.


Dated: November 8, 2011

_____
Lisa Pupo Lenihan
United States Magistrate Judge

cc:     EUENE M. PRATT**,** BY8768
        SCI Fayette
        PO Box 9999
        LaBelle, PA 15450

---

exhausted it through all appropriate channels.